UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALIBU MEDIA, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN DOE SUBSCRIBER ASSIGNED<br>IP ADDRESS 73.235.190.122,<br><br>    Defendant. | No.  2:16-cv-1733-JAM-KJN<br><br><br>ORDER |

INTRODUCTION

In this action, plaintiff Malibu Media, LLC alleges that defendant John Doe, known to plaintiff only by his IP address, infringed plaintiff's copyrights by using the BitTorrent File Distribution Network.  On October 11, 2016, the court granted plaintiff's *ex parte* motion to conduct expedited discovery and serve a Rule 45 subpoena on defendant's internet service provider ("ISP"), in this case Comcast, to obtain defendant's name and address.  (ECF No. 9.)

Subsequently, on January 2, 2017, defendant appeared through counsel and filed a motion to quash the subpoena on Comcast and/or for a stay of this action.  (ECF No. 12.)  Plaintiff has opposed the motion, and defendant filed a reply brief.  (ECF Nos. 14, 15.)  At the March 2, 2017 hearing on the motion, attorney Henrik Mosesi appeared telephonically on behalf of plaintiff, and

1

attorney Robert Robinson appeared on behalf of defendant.

After carefully considering the court's record and the applicable law, the court DENIES the motion.

DISCUSSION

Plaintiff commenced a large number of BitTorrent copyright infringement cases in this district, which have since been related. On May 5, 2016, the court conducted a global hearing with respect to plaintiff's *ex parte* motions to conduct expedited discovery that had been pending in several of the related actions filed by plaintiff in the Sacramento division of this district. In connection with those motions, plaintiff lodged with the court for initial *in camera* review a status report addressing various questions/issues outlined in the court's April 8, 2016 order scheduling the May 5, 2016 hearing, including *inter alia* plaintiff's ownership and management; an explanation of plaintiff's process for detecting infringement, identifying infringers and their location, and prioritizing prosecution of certain infringers; and plaintiff's litigation statistics. Plaintiff also provided representative samples of plaintiff's settlement correspondence and settlement agreements. The status report was subsequently filed on the court's public docket, and the exhibits to the status report, which contain confidential settlement correspondence and settlement agreements, were filed under seal.[1] At the May 5, 2016 hearing, plaintiff's sole owner, Colette Pelisseir Field, appeared along with counsel and responded to further questioning by the court. Following that hearing, on May 10, 2016, the court issued a comprehensive order granting the motions to conduct expedited discovery in all of the related cases, subject to certain restrictions identified in that order.

Subsequently, plaintiff commenced several new actions, including the instant action on July 24, 2016, which were also ultimately related to the initial set of actions on August 4, 2016. (ECF No. 5.) As noted above, on October 11, 2016, the court granted plaintiff's *ex parte* motion to conduct expedited discovery and serve the subpoena at issue on Comcast. (ECF No. 9.) The

---

[1] Those documents were filed on the court's docket in the first-filed case, Malibu Media, LLC v. John Doe subscriber assigned IP address 108.206.113.196, 2:15-cv-2701-JAM-KJN, ECF Nos. 11, 12.

court found, based on the showing made in plaintiff's motion, as well as plaintiff's representations made in its status report filed in <u>Malibu Media, LLC v. John Doe subscriber assigned IP address 108.206.113.196</u>, 2:15-cv-2701-JAM-KJN, ECF Nos. 11, 12, and verbally at the May 5, 2016 hearing in that matter, that plaintiff had shown that good cause exists to conduct the expedited discovery to identify and serve defendant John Doe.  (<u>Id.</u>)  The instant motion to quash by defendant John Doe followed.

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:  (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  Additionally, the court "may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Fed. R. Civ. P. 45(d)(3)(B).

Defendant's motion to quash here does not argue that the subpoena should be quashed based on any of the specific mandatory or permissive grounds outlined above.  He identifies no issue with respect to the timing or geographical area for compliance; nor does he contend that disclosure of his name and address implicates privileged or protected matter sufficient to quash the subpoena, or that it somehow involves an undue burden.[2]  Additionally, he does not argue that the subpoena requests trade secrets, protected commercial information, or certain expert information.  Instead, defendant appears to contend that plaintiff should not have been permitted to issue the subpoena in the first place, because plaintiff's factual showing in support of the requested expedited discovery is lacking and inaccurate.  As such, defendant's motion to quash is

---

[2] For the first time at the hearing, defendant's counsel suggested that disclosure of the information subpoenaed (defendant's name and address) implicates privileged or protected matter and involves an undue burden.  However, defendant's motion did not raise those arguments, or provide any legal authority and analysis in support of such arguments; nor did plaintiff have an opportunity to respond.  As such, the court declines to consider them.

more appropriately construed as a motion for reconsideration of the court's prior order authorizing the requested expedited discovery.

Defendant seeks reconsideration based on three primary arguments: (1) the software and methods used by plaintiff's investigators to detect infringement are inadequate; (2) the method used by plaintiff's investigators to manually verify infringement lacks integrity; and (3) plaintiff fails to protect its works according to industry media distribution standards. Each argument is addressed separately below.

*Software/Methods Used To Detect Infringement*

Plaintiff's investigator, a company named Excipio, uses a certain forensics system called NARS to detect infringement of plaintiff's copyrighted works. Defendant claims that NARS was developed without the standard verification and validation processes in place for mission critical software and samples a too small fraction of the file (typically 16KB out of a 100MB file) to determine infringement. In support of that argument, defendant relies primarily on the expert reports (see ECF Nos. 12-5, 12-6) of a software reliability expert, Dr. Kal Toth, and a Bittorrent media distribution expert, Mr. Bradley Witteman, whom defendant intends to offer as experts in a case apparently set for trial in late March 2017 in the Northern District of California. See Malibu Media, LLC v. John Doe subscriber assigned IP address 76.126.99.126, 3:15-cv-4441-WHA.

The court has carefully reviewed the reports, but finds that they do not compel reconsideration of the court's prior order authorizing the expedited discovery. To be sure, the reports point to various alleged deficiencies in the software and methods used by Excipio as found by those experts. At the hearing, defendant's counsel also emphasized that the software and methods used by Excipio fail to adequately demonstrate that defendant downloaded a complete copy of plaintiff's copyrighted work(s). However, plaintiff's own computer forensics expert and a former computer crimes detective, Patrick Paige, purportedly tested and verified the accuracy of Excipio's software. (ECF No. 7-3.) Additionally, plaintiff cites numerous cases in which courts accepted the accuracy of Excipio's software and methods for purposes of permitting expedited discovery. (ECF No. 14 at 3-4.) See, e.g., Malibu Media, LLC v. Doe, 2016 WL 4444799, at **7, 12 (E.D.N.Y. Aug. 23, 2016) (concluding, after conducting a full evidentiary

4

hearing, that Excipio's senior assistant architect "offered credible testimony regarding the methods that Excipio used on behalf of Malibu Media in identifying the Doe Defendant's IP address as an infringer of its copyrighted material," and denying motion to quash subpoena).

In short, a battle of the experts (or as defendant alludes to, a full <u>Daubert</u> analysis) at this early stage of the case is inappropriate. It may or may not be that defendant could ultimately show that the Excipio software and methods are flawed and incapable of proving copyright infringement. That question is for another day, and the court expresses no definitive opinion regarding the matter at this time. However, at this preliminary juncture, plaintiff has sufficiently demonstrated the reliability of the Excipio software and methods to support issuance of the subpoena.[3]

*Method Used to Verify Infringement*

Plaintiff also apparently uses the services of Tobias Fieser, an employee of IPP International UG in Germany, to verify the infringements by manually comparing video clips to plaintiff's videos.

Defendant contends that Mr. Fieser does not spend sufficient time on the project to properly verify the infringements:

> Tobias Fieser verifies infringements for 3-5 hours per week. Assume Fieser works 5 hours per week for 52 weeks a year, this computes to a total of 15,600 minutes of verification time. Given that the average Malibu Media work is 20 minutes, and the average case has approximately 20 alleged infringements, and in 2015 Malibu sued over 1000 defendants, the total amount of time needed to verify the infringements by Mr. Fieser would have amounted to 400,000 minutes. The numbers 15,600 vs. 400,000 are not even in the same ballpark and do not make sense.

(ECF No. 12-1 at 5.) Plaintiff counters that defendant's calculation "ignores that each movie is

---

[3] In his reply brief, defendant also raises questions as to the accuracy of plaintiff's geolocation technology. Because defendant failed to raise the issue in his motion, and raises it for the first time on reply, the court declines to consider it. Nevertheless, even if the court reached the issue, it would find that plaintiff has made a satisfactory preliminary showing in its global status report that the geolocation technology used is reasonably reliable, at least for purposes of issuing the subpoena. See Malibu Media, LLC v. John Doe subscriber assigned IP address 108.206.113.196, 2:15-cv-2701-JAM-KJN, ECF No. 11.

identified by a unique hash value, and Mr. Fieser only needs to confirm each movie once, not again and again in each suit." (ECF No. 14 at 5.) In any event, defendant will have an adequate opportunity to conduct discovery in an attempt to show that Mr. Fieser's methods are somehow deficient or improper. If such discovery is developed, it may well be fodder for cross-examination at trial. Nevertheless, defendant's rough and speculative calculations at this juncture do not warrant reconsideration of the subpoena.[4]

Defendant also posits that Mr. Fieser improperly compares the video clips with the movies posted on plaintiff's website as opposed to the depository copies lodged with the Copyright Office. However, defendant does not explain his basis for believing that the copies of the movies posted on plaintiff's website are somehow different from the copies lodged with the Copyright Office. Furthermore, defendant does not elucidate how that argument impacts the analysis as to whether the subpoena should be quashed, especially given that the court here is not concerned with the ultimate merits of whether plaintiff has sufficiently proven infringement.

Defendant further suggests that Mr. Fieser is not licensed as a private investigator in California, and that the court therefore should not accept his testimony. That argument borders on the frivolous. Individuals provide evidence in court every day without necessarily being licensed as private investigators. Significantly, defendant cites no legal authority for the proposition that Mr. Fieser, a German resident, required a California private investigator license to perform the type of work he did for plaintiff, or to provide evidence regarding such work in court.

*Plaintiff's Efforts To Protect Its Works*

Finally, defendant argues that plaintiff does not protect its works according to industry media distribution standards, because it posts unencrypted files on its website and distributes such

---

[4] Defendant's careless use of statistics in his briefing certainly does not tend to lend significant credibility to his arguments. For example, defendant states that the "gross data demonstrates that the Malibu [sic] has a false positive rate of at least 80% or more (this is the number of cases dismissed vs. the total number of cases)." (ECF No. 15 at 3) (emphasis in original). However, as defendant is no doubt aware, cases are dismissed for various reasons, including settlement. As such, it is disingenuous to argue that the 80% figure necessarily suggests that plaintiff identified the wrong defendant in 80% of filed cases.

unencrypted files to affiliates, and also fails to send Digital Millennium Copyright Act ("DMCA") notices to infringers. Plaintiff disputes at least the latter, but even if true, defendant provides no legal authority suggesting that such measures are required to prosecute a traditional copyright infringement claim.

CONCLUSION

In sum, defendant's motion does not provide sufficient grounds for the court to reconsider its prior order authorizing expedited discovery in the form of the subpoena issued to Comcast. Furthermore, defendant has provided no proper basis for a stay of this action pending a trial of the above-mentioned Malibu Media action in the Northern District of California.[5]

Accordingly, IT IS HEREBY ORDERED that the motion to quash the subpoena to Comcast or to stay the action (ECF No. 12) is DENIED.

Dated: March 3, 2017

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[5] Significantly, at the hearing, defendant conceded that the trial scheduled in the Northern District of California would be a jury trial, and not a bench trial with findings of fact and conclusions of law prepared by a judge. As such, even assuming *arguendo* that Malibu Media lost in that trial, it is far from clear that a judgment in the defendant's favor in that case would be dispositive with respect to the technology and methodology issues raised in this motion.

7